**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ANNA SMIGELSKI, | : | |
| Plaintiff | : | CIVIL CASE NO. |
| | : | 3:17-CV-260(JCH) |
| v. | : | |
| | : | |
| CONNECTICUT DEPARTMENT | : | |
| OF REVENUE SERVICES, | : | JANUARY 15, 2019 |
| Defendant. | : | |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 36)**

The plaintiff, Anna Smigelski ("Smigelski") brings this action, alleging

discrimination on the basis of gender and gender-plus-age, pursuant to Title VII of the

Civil Rights Act of 1964.  See Complaint ("Compl.") (Doc. No. 1) at 5.  She names as

the defendant the Connecticut Department of Revenue Services ("DRS").  DRS has

moved for summary judgment.  See Motion for Summary Judgment ("Mot. Summ. J.")

(Doc. No. 36).  Smigelski objects to the Motion.  See Smigelski Objection to Defendant's

Motion for Summary Judgment (Doc. No. 39) ("Smigelski Opp.").

For the reasons set forth below, the Motion for Summary Judgment (Doc. No. 36)

is granted.

## I.    STANDARD OF REVIEW

On a motion for summary judgment, the moving party bears the burden of

establishing the absence of any genuine issue of material fact.  Zalaski v. City of

Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).  If the moving party satisfies

that burden, the nonmoving party must set forth specific facts demonstrating that there

is a genuine issue for trial.  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  A

genuine issue exists where the evidence is such that a reasonable jury could decide in

the non-moving party's favor.  See, e.g., Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, (1986)).

The court's role at summary judgment "is to determine whether genuine issues of material fact exist for trial, not to make findings of fact."  O'Hara v. Nat. Union Fire Ins. Co. of Pittsburgh, 642 F.3d 110, 116 (2d Cir. 2011).  Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment.  See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). Additionally, the evidence the court considers in ruling on a motion for summary judgment must be admissible evidence, or evidence that could be readily reduced to an admissible form at trial.  See LaSalle Bank National Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005); Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001) ("Affidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial.") (citation omitted).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986).

## II.    FACTS[1]

Smigelski, who is female, was born in 1959.  Smigelski Memorandum of Law in Support of Objection to Motion for Summary Judgment ("Mem. in Opp.") (Doc. No. 39-1)

---

[1]  The relevant facts are undisputed unless otherwise indicated and are taken from DRS' Statement of Facts, Smigelski's Statement of Facts, and the parties' submissions in support of and in opposition to the Motion for Summary Judgment.  Where facts are taken from DRS' Statement of Facts, they are admitted by Smigelski, unless otherwise noted.

at 1.  Smigelski was hired by the State of Connecticut as a clerk in 1983.  Id.  She worked for the State of Connecticut until December 1996 and was rehired as a Connecticut Careers Trainee in February 1999.  Id.  Smigelski was promoted to the position of Tax Correction Examiner 1 ("TCE 1"), within DRS, on February 8, 2000.  Id. at 1–2.  In October 2013, DRS underwent a reorganization.  DRS Local Rule 56(a)1 Statement of Facts ("DRS Facts") (Doc. No 36-2) ¶ 3; Smigelski Local Rule 56(a)2 Statement of Facts ("Smigelski Facts") (Doc. No. 39-3) at 1 ¶ 3.  As part of the reorganization, a Reclassification Criteria ("Original Criteria") was developed to allow for progression of employees from the TCE 1 classification to the Tax Correction Examiner 2 ("TCE 2") classification.  DRS Facts ¶ 4; Smigelski Facts at 1 ¶ 4. The Original Criteria became effective in October 2013.  DRS Facts ¶ 5; Smigelski Facts at 1 ¶ 5.  The Original Criteria required that a TCE 1 meet the following requirements to be reclassified: (1) one year as a TCE 1; (2) ratings of superior or better, and no more than one satisfactory rating on the most recent Annual Service Rating; and (3) demonstrated ability to independently and consistently analyze and resolve at least three out of five tax issues at the TCE 2 level.  DRS Facts ¶ 6; Smigelski Facts at 1 ¶ 6.

In June 2015, when DRS conducted reclassifications from TCE 1 to TCE 2, there was not a limited number of TCE 2 positions available: any TCE 1 that met the Criteria were reclassified to TCE 2.  DRS Facts ¶ 12; Smigelski Facts at 2 ¶ 12.  At that time, Smigelski was part of Individual Tax Team One, along with Erick Siu ("Siu") and Michael Gigliotti ("Gigliotti").  DRS Facts ¶ 18; Smigelski Facts at 3 ¶ 18.  In June 2015, DRS reclassified Gigliotti and Siu as TCE 2s.  Mem. in Opp. at 2.  Smigelski was not reclassified as a TCE 2.  Smigelski Facts at 13 ¶ 86.  Gigliotti received superior ratings

in all categories on his 2014 Service Rating; Siu received two superior ratings and two satisfactory ratings. DRS Facts ¶ 20; Smigelski Facts at 3 ¶ 20. Smigelski received one superior rating and three satisfactory ratings. DRS Facts ¶ 23; Smigelski Facts ¶ 23. Smigelski received similar ratings in previous Service Ratings: she received two satisfactory ratings in 2011, 2012, and 2013, four in 2010, and three in 2009. DRS Facts ¶ 34; Smigelski Facts at 4 ¶ 34. Smigelski's 2014 Service Rating noted frequent errors in her work, requirement for some supervision, and reluctance to address corrections as instructed. DRS Facts ¶ 30; Smigelski Facts ¶ 30. Smigelski's Service Ratings in previous years contained similar notes regarding a need to reduce errors and respond to supervisors in a timely manner. DRS Facts ¶ 34; Smigelski Facts at 4 ¶ 34. In June 2015, a total of 14 women were reclassified to TCE 2, thirteen of whom were over the age of 40. DRS Facts ¶ 38; Smigelski Facts at 5 ¶ 38. No one at DRS, at any time, made any comments to Smigelski about her age or gender. DRS Facts ¶ 39; Smigelski Facts at 5 ¶ 39.

## III. DISCUSSION

### A. Gender Discrimination

Claims of employment discrimination brought pursuant to Title VII are generally analyzed under the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Walsh v. New York City Hous. Auth., 828 F.3d 70, 74–75 (2d Cir. 2016). Under the McDonnell Douglas framework, a plaintiff alleging discriminatory failure to promote must first establish a prima facie case of discrimination. She may do so "by demonstrating that: (1) she was within a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse

action occurred under circumstances giving rise to an inference of discrimination." Id. at 75 (internal quotations and citations omitted). Once the plaintiff has met the minimal burden of stating a prima facie case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. Id. If the employer meets this burden of production, the plaintiff must submit sufficient evidence to "show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." Id.

DRS argues that summary judgment in its favor is proper because Smigelski failed to state a prima facie case of discrimination. Defendant's Memorandum in Support of Motion for Summary Judgment ("Mem. in Supp.") (Doc. No. 36-1) at 6–8. DRS argues that, (1) Smigelski failed to demonstrate that she was qualified to be reclassified as a TCE 2; and (2) Smigelski cannot establish that DRS' failure to reclassify her as a TCE 2 took place under circumstances raising an inference of discrimination. Id. at 6–7. Smigelski responds that, "[t]he McDonnell Douglas framework does not lend itself to the instant case," because (1) the criteria that DRS points to as showing Smigelski was unqualified are suspect, and (2) Smigelski's service rating is suspect. See Mem. in Opp. at 12.

The court finds no reason to conclude that the McDonnell Douglas framework is inapplicable to this case. While the McDonnell Douglas approach is not applied to Title VII class actions or allegations of a pattern and practice of discrimination, it is a well-established framework for analyzing individual claims of discrimination under Title VII. See United States v. City of New York, 717 F.3d 72, 83–84 (2d Cir. 2013) (examining

differences between individual and class action Title VII claims). The cases that Smigelski cites in support of her argument—that the <u>McDonnell Douglas</u> framework does not apply to this case—do not lend her the support she claims.

Smigelski cites first to <u>Grant v. Bethlehem Steel Corp.</u>, 635 F.2d 1007 (2d Cir. 1980). That case was a class action alleging violations of Title VII. <u>See</u> <u>Grant</u>, 635 F.2d at 1010. As noted, the <u>McDonnell Douglas</u> framework is not generally applied in the class action context. <u>See</u> <u>City of New York</u>, 717 F.3d at 83–84. This case involves an individual claim of disparate treatment, and Smigelski's comparison to the analysis in <u>Grant</u> is therefore inapposite.

Smigelski also cites to <u>James v. New York Racing Ass'n</u>, 233 F.3d 149 (2d Cir. 2000). However, that case did not hold that individual discrimination claims should not be analyzed through the <u>McDonnell Douglas</u> framework. It held that:

> (i) evidence satisfying the minimal <u>McDonnell Douglas</u> <u>prima</u> <u>facie</u> case, coupled with evidence of falsity of the employer's explanation, may or may not be sufficient to sustain a finding of discrimination; (ii) once the employer has given an explanation, there is no arbitrary rule or presumption as to sufficiency; (iii) the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove-particularly discrimination.

<u>James v. New York Racing Ass'n</u>, 233 F.3d 149, 156–57 (2d Cir. 2000). <u>James</u> is properly read as an examination of the shifting burdens of production and persuasion in connection with a motion for summary judgment in a Title VII case. <u>See</u> <u>id.</u> ("[O]nce a minimal prima facie case is proved, and the employer's nondiscriminatory explanation has been given, the <u>McDonnell Douglas</u> presumptions disappear from the case, and the governing standard is simply whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred."). In short,

James provides, in part, an explanation of the McDonnell Douglas framework; it is not, however, evidence of the framework's inapplicability.

Here, Smigelski has failed to present evidence satisfying a prima facie case of discrimination. Specifically, she has not put forward evidence to support a finding that she was qualified for reclassification to the TCE 2 position. Under the Original Criteria, a TCE 1 was qualified for reclassification if the employee (1) had one year of experience as a TCE 1; (2) demonstrated an ability to resolve three out of five listed tax issues; and (3) received "superior" or better ratings, and no more than one "satisfactory" rating, on their latest performance evaluation. See Smigelski Opp., Ex. 2 (Doc. No. 39-6) at 1–4. Under the Modified Criteria, TCE 1s had to meet all the requirements established in the Original Criteria, except that they must have received "superior" or better, and no more than two "satisfactory" ratings on their latest performance evaluation. DRS Mem. in Supp. at 7. This change made it easier for TCE 1s to be reclassified to TCE 2, as it allowed one more satisfactory rating than the Original Criteria.

Smigelski stated in her deposition that she was qualified for the TCE 2 position because she had been working on returns since 1999, and therefore had greater knowledge and experience as to tax issues than others who were reclassified. See Smigelski Opp., Ex.8 ("Smigelski Deposition") (Doc. No. 39-12) at 8. However, Smigelski's 2014 performance evaluation shows that she received three satisfactory ratings. See Mot. Summ. J., Ex. 4 ("Perez Affidavit"), Attach. D ("Smigelski 2014 Performance Review") (Doc. No. 36-7) at 15. Moreover, Smigelski admitted that seniority is not a factor in reclassifications. See DRS Facts ¶ 8; Smigelski Facts at 2 ¶ 8. Smigelski was not qualified for reclassification to TCE 2 under either the Original

Criteria or the Modified Criteria; Smigelski failed to come forward with facts supporting a conclusion that she was qualified for the TCE 2 position. Because Smigelski failed to state a <u>prima</u> <u>facie</u> case of discrimination, summary judgment for DRS is appropriate.

B.     Evidence of Intentional Discrimination

While the court has concluded that summary judgment for DRS is appropriate based on Smigelski's failure to establish a <u>prima</u> <u>facie</u> case of discrimination, it also concludes that, even assuming Smigelski stated a <u>prima</u> <u>facie</u> case or Smigelski correctly argues that the <u>McDonnell Douglas</u> analysis should not be employed, Smigelski failed to come forward with evidence upon which a reasonable jury could conclude that DRS' failure to reclassify her to TCE 2 was pretext—in other words, that DRS was motivated, even in part, by gender discrimination. <u>See</u> <u>Cronin v. Aetna Life</u> <u>Ins. Co.</u>, 46 F.3d 196, 203 (2d Cir. 1995) (at summary judgment, plaintiff is required to show that nondiscriminatory reasons offered were not the only reasons and that the prohibited factor was at least one of the "motivating" factors.)

Smigelski makes a number of arguments in opposition to DRS' Motion for Summary Judgment. She argues that: (1) DRS promoted Siu despite the fact that Siu did not meet the Reclassification Criteria, <u>see</u> Mem. in Opp. at 12; (2) DRS' claim that the Modified Criteria applied during the period at issue lacked credibility, <u>id.</u> at 13; (3) Perez did not have the authority to enter into a deal with the union, establishing that the deal creating the Modified Criteria did not exist, <u>id.</u>; (4) the Modified Criteria is a "litigation creation," <u>id.</u> at 14; (5) Smigelski's service ratings were not supported by the facts, <u>id.</u>; and (6) Siu and Gigliotti were improperly reclassified because they could not independently resolve three out of five of the required tax issues, <u>id.</u> at 16. The court

addresses Smigelski's arguments as to the Modified Criteria, before addressing her arguments as to her and her comparators' qualifications for reclassification.

### 1. Modified Reclassification Criteria

Smigelski argues that the Modified Reclassification Criteria—which DRS claims was put in place to make reclassification from TCE 1 to TCE 2 easier during the June 2015 Reclassification Period—never existed. <u>See</u> Mem. in Opp. at 13. Smigelski argues that DRS cannot establish that the deal to change the Criteria existed because (1) it cannot produce written evidence of its existence; (2) Perez did not have legal authority to make such a deal; and (3) because news of the deal was not distributed to "rank and file" employees. <u>Id.</u> at 13–14.

Admissible evidence to support a summary judgment motion is not limited to documentary evidence. A party may also support an assertion through citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). Here, DRS argued that the Modified Criteria was in place in June 2015. It supported the argument by citation to the depositions of two DRS employees, Jeanette Perez and Beth Souza. <u>See</u> DRS Mem. in Supp. at 5–6. Perez testified that she and a union representative, Tommy Smalls, entered into a verbal agreement that DRS would reclassify individuals from TCE 1 to TCE 2, with up to two satisfactory ratings on their most recent Service Rating. Smigelski Opp., Ex. 1 ("Perez Deposition") (Doc. No. 39-5) at 9–10. At that time, Souza testified that she had discussions with Perez, in which Perez indicated that individuals would be deemed to meet the "overall superior or better" requirement if they

had no more than two, rather than one, satisfactory rating.  Smigelski Opp., Ex. 6

("Souza Deposition") (Doc. No. 39-10) at 31–32.  This testimony is consistent with, and

was proper evidentiary support for, DRS' argument that a relaxed Reclassification

Criteria was in effect in June 2015.

In response, Smigelski argues that the deal between the union and DRS never

existed, and that the Modified Criteria never existed.  See Mem. in Opp. at 13–14.  The

court notes that Smigelski's Memorandum cited to no admissible evidence in support of

these arguments, with the exception of a section citing to a Connecticut Statute.  Id.

Smigelski's reliance on "common sense" notwithstanding, see id. at 13, "conclusory

allegations or denials in legal memoranda are not evidence and cannot by themselves

create a genuine issue of material fact where none would otherwise exist."  Lipton v.

Nature Co., 71 F.3d 464, 469 (2d Cir. 1995).

Smigelski does cite to evidence in support of these arguments in her Statement

of Facts.  See Smigelski Facts at 5 ¶¶ 4–7, 6 ¶¶ 8–14.  However, Smigelski does not

address the testimony from Souza that Perez told her about the modified reclassification

criteria, the testimony from Souza about her discussions with Perez about the existence

of the agreement, or the testimony from Perez that Perez verbally informed senior

management, including Peter Santagata, David Burke, and Rosemary Cleary, of the

existence and applicability of the Modified Criteria.  Nor does Smigelski deny that the

Department of Administrative Services, a separate Department of the State of

Connecticut, reviewed and approved the July 2015 reclassifications, including that of

Siu, who only qualified for reclassification if the Modified Criteria were applicable.  What

remains is a conclusory denial of the evidence presented by DRS.  Such a denial is

insufficient to withstand a properly supported summary judgment motion.  Robinson v. Concentra Health Servs., Inc., 781 F.3d 42, 44 (2d Cir. 2015) (nonmoving party may not "rely on conclusory allegations or unsubstantiated speculation" to defeat properly supported summary judgment motion).

Smigelski further argues that, because Connecticut General Statutes section 5-227a states that the Commissioner for Administrative Services is responsible for establishing reclassification criteria, and because Perez was not the Commissioner, she lacked the authority to enter into a deal with the Union.  Mem. in Opp. at 13.  Smigelski argues that this lack of authority establishes that the "side deal" with the union never existed.  Id.

Even accepting as true that Perez operated beyond her authority in reaching an agreement with the union, whether she in entered into an agreement with the union is a separate factual question, as is whether the agreement was assented to by the Department of Administrative Services ("DAS"), the Connecticut Department headed by the Commissioner of Administrative Services.  Here, DRS presented evidence that DAS approved and finalized all reclassifications during the period at issue.  DRS Facts ¶ 16.  Smigelski admitted that DAS approved the reclassifications.  Smigelski Facts at 3 ¶ 16.  Moreover, the reclassifications that DAS approved included individuals whose Service Ratings did not meet the Original Criteria, but who did meet the Modified Criteria, as evidenced by Siu's reclassification.  Here, DRS has provided sufficient evidence to show that there is no genuine issue of material fact as to the existence of an agreement between the union and DRS, or that the Modified Criteria were in effect in June 2015.  Smigelski has failed to offer admissible evidence to rebut DRS' arguments, and her

conclusory claims that, because no written record of an agreement exists, the agreement itself does not exist, does little more than speculate in her favor. But when a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." Robinson, 781 F.3d at 44. Because Smigelski has failed to do more, the court concludes that no genuine issue of material fact exists as to whether the Modified Criteria existed or were used to determine eligibility for reclassification in June 2015.

### 2. Siu's and Gigliotti's Qualifications for Reclassification

Siu received two satisfactory and two superior ratings on his 2014 Service Rating. See DRS Facts ¶ 20; Smigelski Facts ¶ 20. Smigelski does not contest Siu's Service Rating. See DRS Facts ¶ 20; Smigelski Facts ¶ 20. Having concluded that there is no genuine issue of material fact as to whether the Modified Criteria was applicable to reclassifications in June 2015, and because Smigelski makes no argument—separate from her argument as to the existence of the Modified Criteria—as to Siu's qualification for reclassification due to his Service Rating, there is no genuine issue of material fact as to that issue.

Smigelski's also argues that DRS improperly determined that Siu and Gigliotti were qualified for reclassification based on the second step in the reclassification process—that is, the determination as to whether they could analyze and resolve three out of five tax issues. Mem. in Opp. at 16. However, as to this argument, Smigelski has failed to come forward with evidence upon which a jury could find that she was "similarly

situated in all material respects to the individuals with whom she seeks to compare herself." Martinez v. Davis Polk & Wardwell LLP, 208 F. Supp. 3d 480, 488 (E.D.N.Y. 2016), aff'd, 713 F. App'x 53 (2d Cir. 2017) (quoting Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000)). In the context of a claim of discriminatory failure to promote, whether a plaintiff was "similarly situated" involves "comparing the qualifications of the plaintiff with those of the person[s] promoted." Id. at 487. Smigelski was found to be unqualified for reclassification at the first stage, based on her Service Review. A review of a TCE 1's ability to independently and consistently analyze and resolve three out of five tax issues only occurs after the employee is found to be qualified for reclassification based on her Service Rating. Therefore, the review of Smigelski's ability to analyze and resolve tax issues was not conducted. See DRS Mem. in Supp. at 9; DRS Response (Doc. No. 44) at 7.

Siu and Gigliotti were both qualified for reclassification, under the Modified Criteria, based on a review of their Service Ratings. Therefore, DRS moved to the next evaluative step, which was determining whether they could consistently analyze three of five tax issues. Even assuming Siu and Gigliotti were improperly reclassified at this second step, such a finding could not support a conclusion that Smigelski suffered disparate treatment. Siu and Gigliotti were not appropriate comparators because they were evaluated at a stage of reclassification which Smigelski never reached. Therefore, whether Siu and Gigliotti were improperly reclassified to TCE 2 at this second step of the reclassification process is not a genuine issue of material fact.

3. Smigelski's Service Ratings

Finally, Smigelski argues that her 2014 Service Rating is not supported by the facts and is subjective. Mem. in Opp. at 14–16. Smigelski argues that Souza failed to conduct quarterly meetings with Smigelski, and the lack of documented quarterly meetings establishes that Smigelski's job performance was good. Id. at 14. She similarly argues that a lack of documented "counselings," progressive discipline, and comments on Smigelski's Service Ratings indicated that there was "nothing wrong" with her performance. Id. at 15. Instead, Smigelski argues, Smigelski's "problem, in the eyes of the defendant, was that she was an older female." Mem. in Opp. at 15.

The evidence does not support Smigelski's conclusory claims that her performance was good, or without issue. Smigelski's received a "Satisfactory" rating in three areas: (1) Quality of Work; (2) Dependability; and (3) Ability to Deal with People. As to Quality of Work, the Service Rating noted that, while Smigelski did her assigned work "as required," her work "frequently" contained errors. See Affidavit of Laura Odermatt, Attach. A (Doc. No. 36-8) ("Smigelski Service Rating") at 6. The Service Rating suggested that Smigelski should "thoroughly review her work to minimize or eliminate errors." Id. As to Dependability, while the Service Rating contained no suggestion for improvement, it did note that Smigelski continued to require "some supervision." Id.[2] As to Ability to Deal with People, the Service Rating noted that Smigelski demonstrated "some reluctance to address corrections as instructed," and

---

[2] While the Dependability category did not include suggestions for improvement, the Service Rating form clearly states that only ratings in the "Less than Good" category, of which satisfactory ratings are not a part, require recommendations and counselling. See Smigelski Service Rating (Doc. No. 36-8) at 6.

could improve by responding with "complete and thorough responses to [supervisors'] questions." Id. DRS noted that Smigelski received "similar ratings" in prior Service Ratings. DRS Facts ¶ 34; Smigelski Facts at 4 ¶ 34.

DRS also provided evidence of a lengthy exchange of emails between Souza and Smigelski, wherein Souza provided greater detail as to the basis for Smigelski's Service Rating. See Email Exchange, Smigelski Deposition Excerpts, Ex. 5 (Doc. No. 36-4) at 35–39. Souza noted that, in order to improve her Service Rating, Smigelski could: (1) conduct work more thoroughly to minimize errors; (2) minimize the amount of transferred calls—and specifically that Smigelski's rate of transferred calls was eight percent higher than other employees on the team; (3) improve workplace relationships and be more approachable; (4) improve communication with coworkers; (5) accept constructive suggestions for improvements, without becoming "challenging"; and (6) accept training without negative feedback. Id. at 38. These suggestions mirror the suggestions for improvement on Smigelski's Service Rating.

Souza also testified that Smigelski was a challenging employee. DRS Facts ¶ 32; Smigelski Facts at 4 ¶ 32. In line with the Service Rating, she referenced: Smigelski refusing training because Smigelski thought the training was clerical, Smigelski's "reluctance" to take instruction regarding errors made on tax returns, and the impact of Smigelski's errors, including issuing refunds on fraud accounts. DRS Facts ¶ 32; Smigelski Facts at 4 ¶ 32.

Moreover, even accepting as true all of Smigelski's claims that DRS did not place her on escalating levels of progressive discipline, that she was not offered "counselings," and that the comments on her Service Review were inadequate, she has

presented no evidence that these acts or failures to act were in any way linked to discrimination.  There was no evidence provided, for example, that any person outside of Smigelski's protected class, who was similarly situated to her, was provided greater opportunity to improve performance through progressive discipline, training, "counselings," or other means.  Insofar as Souza or other supervisors at DRS failed to, or should have, engaged Smigelski in a greater level of counselling, or should have provided greater assistance to Smigelski in improving her performance, those are not—absent evidence of discrimination—questions for this court.  See Scaria v. Rubin, 117 F.3d 652, 655 (2d Cir. 1997) ("This Court does not sit as a super-personnel department that reexamines an entity's business decisions");  Lewis v. Two's Co., No. 7:06-CV-4775 (WWE), 2008 WL 6192169, at *5 (S.D.N.Y. Mar. 16, 2008) ("[I]t is not the province of the Court to sit as a super-human resources department; a[n employer] is legally entitled to make bad employment decisions.").

DRS has met its burden to show that there is no genuine issue of material fact as the factual basis for Smigelski's Service Review.  In response, Smigelski has argued that, because she was not disciplined for her performance, the Service Rating was not reflective of the facts.  She has provided no evidence, however, to challenge the accuracy of the Service Rating, the testimony of Souza and Perez, or the email explanation of Smigelski's job performance.  A plaintiff, faced with a properly supported motion for summary judgment, must do more than provide conclusory refutations of the evidence.  Robinson, 781 F.3d at 44.  The court concludes that there is no genuine issue of material fact as to whether Smigelski's Service Rating was supported by the facts.

DRS has met its burden to demonstrate the absence of a genuine issue of material fact as to whether its decision not to reclassify Smigelski was based on gender discrimination.  Smigelski, in response, has failed to come forward with evidence upon which a reasonable jury could conclude that DRS' decision was based in whole or in part upon gender discrimination.  The court therefore concludes that summary judgment for DRS on Smigelski's Title VII claim is proper.

       C.     <u>Gender-Plus-Age Discrimination</u>

In addition to the claim of gender discrimination, Smigelski alleged that DRS discriminated against her on the basis of her gender-plus-age.  <u>See</u> Compl. at 5.  DRS argued that Smigelski's gender-plus age claim must fail.  DRS argues that Smigelski failed to plead a claim under the Age Discrimination in Employment Act ("ADEA"), that age is not a protected category under Title VII, and that ADEA claims against states are barred by sovereign immunity.  <u>See</u> Mem. in Supp. at 4.  Even if the court were to find that Smigelski could state such a claim against DRS, it would fail because, for the same reasons detailed above as to Smigelski's claim of gender discrimination, she has failed to come forward with evidence that she was qualified, <u>see</u> <u>supra</u> at 7–8, or that  DRS' decision not to reclassify her to TCE 2 was based, in whole or in part, on discrimination.  Therefore, summary judgment on Smigelski's claim of gender-plus-age discrimination is also proper.

## IV.    CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment (Doc. No. 36) is **GRANTED**.  The Clerk is ordered to enter judgment for the defendant and to close this case.

**SO ORDERED.**

Dated at New Haven, Connecticut this 15th day of January 2019.


/s/Janet C. Hall
Janet C. Hall
United States District Judge